#### IN THE

# SUPREME COURT

#### OF THE

## STATE OF MISSOURI,

#### JULY TERM, 1852, AT JEFFERSON CITY.

~~~~~~~~~~~~~~~~

INGRAM AND HATHAWAY, Appellants *vs.* TOMPKINS et al., Respondents.

1. An allegation in a bill in equity, not denied in the answer, is not admitted, but must be proved.
2. A., owning several tracts of land subject to the lien of judgments in the county, executes a bond to convey one of them to B., by deed of general warranty. Before B. records his title, an execution from another county is placed in the hands of the sheriff, which is levied on the other tracts owned by A., and they are sold, and C. becomes the purchaser. Afterwards, and before B. pays the purchase money, executions upon the judgments first named, are levied on the tract sold to B., and it is sold, B. buying it in. *Held,* B. cannot maintain an action against C. for contribution. If C. is liable to any one in such an action, it is to A.

#### *Appeal from Cooper Circuit Court.*

*Hayden* and *Leonard*, for appellants.

I. The equity of Tompkins, under his deed of trust, which was not recorded until after Brown's execution came to the hands of the sheriff, was extinguished by the sale under that execution, at which Gamble purchased. That deed of trust was thenceforth void, and Gamble cannot invoke to his relief the previous equity of Tompkins under it. Vide Digest, 1835, tit. Conveyances, p. 123, secs. 30, 32. *Hill* v.

*Paul*, 8 Mo. 479. *Reed* v. *Heirs of Austin*, 9 Mo. 722. *Jones* v. *Luck*, 7 Mo. 552. *Helm* v. *Logan's heirs*, 4 Bibb, 78. *Graham* v. *Samuel*, 1 Dana, 168.

II. Admitting that we cannot maintain the position that the three elder judgments must be satisfied exclusively out of the lots purchased by Gamble, our position then is, that these lots in Gamble's hands, must contribute rateably to the satisfaction of those judgments, and we submit the following points and authorities in support of this position :

1. When there are several tracts of land subject to a common burthen, each tract contributes to the satisfaction of that burthen in proportion to its value. *Herbert's* case, 3 Rep. 13. 2 Bac. Abr. title Executions, letter B 4, pages 696, 698. 1 Story's Equity, sec. 635 *a*.

2. If there are several tracts of land subject to the lien of an elder execution, and one of them is sold under a junior judgment, the purchaser takes the land *cum onere*, and the land in his hands is the principal debtor for its proportion of the elder judgment. Rev. Stats. 1825 & 1835, "Judgments and Decrees," secs. 4 and 5. *McNair* v. *O'Fallon*, 8 Mo. 200. *Prewitt* v. *Jewell*, 9 Mo. 736. *Waters* v. *Stewart*, 1 Caine's cases, 47. *Russell* v. *Dudley*, 3 Met. 148. *Averall* v. *Wade*, 10 Eng. Cond. Chan. Rep. 498. In Pennsylvania, the rule of the common law in relation to the sale of personal property under execution prevails, and the sale of real estate on execution extinguishes all liens, and passes an unincumbered title to the purchaser, and the liens that existed on the land are transferred to the money, which is distributed according to the priority of the liens. *Bank of North America* v. *Fitzsimons*, 3 Binn. 358. *Semple* v. *Burd*, 7 Serg. & Rawle, 290. *Commonwealth* v. *Alexander*, 14 Serg. & Rawle, 257. *Fickes* v. *Ersick*, 2 Rawle, 166. *Presbyterian Corporation* v. *Wallace*, 3 Rawle, 109. *Stackpole* v. *Glassford*, 16 Serg. & Rawle, 163, and cases collected in Wharton's Digest, 1 vol. 703, 710.

In New York, the rule which prevails as to personal property

does not apply to execution sales of real estate, and there the purchaser takes the land subject to the prior liens. *Jackson* v. *Mills*, 13 Johns. 463. *Lambert* v. *Paulding*, 18 Johns. 311. *Marsh* v. *Lawrence*, 4 Cow. 461; and our statute adopted the New York rule.

3. Gamble purchased subject to the lien of the three elder judgments, which were also a lien upon the land purchased by the complainants, and thereby the land in Gamble's hands became primarily liable for its due proportion of those judgments. So much of the value of the land remained in his hands to be applied to that purpose; and the plaintiffs, who purchased from Smith, are interested in the application, because it discharges their lot from so much of the common burthen.

4. The contract between Gamble and Tompkins, in relation to the proceeds of the sale of the land, bought by the former, cannot relieve it from its liability to contribution. Tompkins' title is extinguished by the execution sale at which Gamble purchased, and of course all the equities that attached to it against the complainants, as subsequent purchasers, are extinguished with it. The contest here is with Gamble's title, and not with that of Tompkins. It is a strange equity in favor of an extinguished title that releases Gamble's lot from the burthen of the elder judgments, robs Smith, the judgment debtor, of that part of the value of his lot that remained in Gamble's hands, and subjects the plaintiffs, who purchased of Smith, to the payment of that portion of the elder judgments that Gamble agreed to pay when he purchased, and which the law permitted to remain in his hands for that purpose.

III. Thus far our case assumes that Gamble, by his execution purchase, acquired, under the doctrine of *Hill* v. *Paul*, a title paramount to Tompkins' mortgage; in other words, a valid title in fee to the property, subject only to the lien of the three elder judgments — a title that entirely extinguished Tompkins' mortgage. If that case is now to be reversed, then

Gamble takes the title subject both to Tompkins' mortgage and the three elder judgments. Tompkins' purchase of the land under the mortgage sale cannot be allowed to stand. He has the title without value ($5,) and with full notice of all the equities in the case, under a sale made expressly to defeat the plaintiffs' rights. Gamble bought at the sheriff's sale, and paid his money upon the faith of the decision of this court. Smith, the judgment debtor, and others interested in the subject, as Smith's creditors, suffered the land to be sold under Tompkins' mortgage for a nominal sum, under the faith of the same decision; and now, if that decision is to be reversed, and the purchase under Tompkins' mortgage to stand, the result is that Gamble loses his money, the elder judgments are thrown upon the plaintiffs' lot, and Tompkins gets a lot worth four thousand dollars for five dollars, and releases his whole debt against Smith, his debtor. These are the equities, or rather the iniquities that the court is now asked to administer.

*Adams* and *Tompkins*, for respondents.

1. When Brown's execution came to the hands of the sheriff of Cooper county, it became a lien on all Smith's real estate in Cooper county, subject alone to the elder judgments, and among the balance it was an equal lien on the tract purchased by complainants, as their title bond, being unrecorded, was void as to said execution. A levy and sale on that tract under Brown's execution, would have passed the title. Hence, the sale of the other tracts under Brown's execution, was a prior sale, in point of law, to the purchase by complainants, and left the tract purchased by complainants, with the remainder of Smith's real estate, first subject to the payment of the elder judgments, before resort could be had to the purchasers under Brown's execution. *Hill* v. *Paul*, 8 Mo. 479. *Reed* v. *Austin's heirs*, 9 Mo. 722. *Frothingham* v. *Stacker*, 11 Mo. 77. Rev. Stats. 1835, title "Conveyances," sec. 42, and title "Executions," sec. 16. Laws of Mo. 1839, title

"Executions," sec. 3.   *McCourtney* v. *Sloan,* 15 Mo. 95. 4 Bibb, 78.

2.  The purchases under Brown's execution were prior, in point of law, to the purchase by complainants, and the true rule of equity in all such cases is, that, as between purchasers in succession from the same grantor, no right of contribution exists to pay elder judgments binding the whole property.  The property which, in point of law, passed from the grantor or debtor last, must be first resorted to.  *Clowes* v. *Dickenson,* 5 Johns. Ch. Rep. 239.  1 Johns. Ch. Rep. 412. 19 J. R. 491.  Fonblanque's Eq. 514 and op. page, (notes.) 3 Leigh, 532.  4 Kent, 6th edition, 179, note *a.*   *Mayo* v. *Stanley,* 10 Serg. and Rawle, 455.  Barr's Penn. Rep. 268.

3.  In this case, the purchasers under Brown's execution are not only entitled to protection as purchasers for valuable consideration without notice,  but they also stand in the shoes of the execution creditor, and are entitled to all his rights in reference to the elder judgments ; and after the levy of Brown's execution, a court of equity would have forced the elder judgments on the other real estate, including the parcel purchased by complainants, for satisfaction, before resort could be had to the real estate covered by the levy under Brown's execution. This would have been done upon the principle that where a creditor has a lien upon several funds or parcels of property, and another creditor has a lien on one of the funds or parcels of property, the senior creditor must first exhaust the funds which the junior creditor cannot touch, in order that the junior creditor may avail himself of his only security.  See authorities cited on the second point, *et passim.*

4. When Brown's execution was levied, the complainants had paid no part of the purchase money to Smith, but the whole remained in their hands, and even up to the 11th of March, 1845, the time of the execution sale, $2,132 remained unpaid, and their equity, if they have any, was upon this fund, which they might have applied to the removal of incumbrances.  They are not in the condition of purchasers for valuable consideration without notice.  To claim such protection,

the purchase money must have been actually paid, and even that would not have put them on an equality with Brown's execution sale. 7 J. Ch. Rep. 65. 1 Atk. 538. 2 Atk. 630. 3 Atk. 304.

5. Even upon the hypothesis of the complainants, that the parcel purchased by them was only liable for its *pro rata* share of the incumbrance, they, by suffering it to be sold, and purchasing it themselves, at sheriff's sale, are concluded by their own act, and could not avail themselves of any such equity, even if it had existed. They were unwilling to rely upon the title they already had, but preferred purchasing an independent title at sheriff's sale, and now wish to force others to aid them in paying for that title. Will a court of equity lend its aid to such speculators, and relieve them from the consequences of their own act? The hazard of the bargain at the sheriff's sale was their own. If they had bought it for a nominal amount, they would have received all the benefit, and the whole amount of the incumbrance would thus have been thrown on the other parcels, (admitting that these parcels were equally liable to the incumbrance,) and if the bargain proved disastrous, they made it themselves, and must abide the consequences.

6. Brown's execution, to satisfy which would have taken all Smith's property, including the parcel purchased by complainants, was an equal lien upon this parcel with the others upon which it was levied, yet it was not executed, although equally liable, and paid no part of that debt. What equity have the complainants to ask contribution from those parcels which have the whole weight of that execution?

7. The complainants' title bond was void as to the defendants, as they had no actual notice of it. Possession was not actual notice, but at most only evidence of notice, or in other words, constructive notice. The defendants deny all notice, and to overturn their answers would require two witnesses or one witness and strong corroborative circumstances. See following authorities, as to difference between actual and con-

structive notice. 1 Story's Eq. sec. 3, 99, &c. Newland on Contracts, ch. 36, page 504, &c. Sugden on Vendors, ch. 17, secs. 1, 2, and ch. 16. 4 Kent Com. 179.

8. So far as parcel one is concerned, it is not only protected by the sale under Brown's execution, but it is also protected by an elder title, under Tompkin's deed of trust, under which it was sold and is now held. This deed of trust was older than the complainants' bond for title and duly recorded before the bond for title, and of course this sale, under the deed of trust, passed the property from Smith before the purchase made by complainants.

SCOTT, Judge, delivered the opinion of the court.

This was a bill in chancery, filed by the complainants, Hathaway and Ingram, against the defendants, to obtain contribution under the following circumstances. Such of the facts only will be stated as are necessary to present the questions involved in the case.

Charles H. Smith owned a considerable real estate, consisting mostly of lots in the town of Boonville, in Cooper county. This estate was subject to the lien of several judgments, rendered against him, in the years 1842 and '3, for a considerable amount. On the 7th of February, 1844, Smith executed to the complainants a title bond, by which, upon the payment of $3200, he promised to convey to them, by deed, with a general warranty, lot 156 and part of lot 157, being a portion of the property above mentioned. This title bond was not recorded until the 23d day of November, 1844. The purchase money was payable in equal instalments, which were severally due 9th November, 1844, July 9th, 1845, and 9th March, 1846, and bore ten per cent. interest. On the 15th March, 1845, Smith, by a deed with general warranty, reciting that the consideration of $3200 had been paid and secured to be paid, conveyed the lots above described to the complainants. This deed was recorded 12th April, 1845. The remainder of Smith's real estate consisted of eleven parcels, which, for the sake of convenience, were numbered numerically.

On the 14th day of February, 1844, Geo. Brown, in the St. Louis Circuit Court, recovered judgment against Smith, as garnishee, for the sum of $4794 38.   On the ———— day of September, 1844, an execution on this judgment was placed in the hands of the sheriff of Cooper county, which was levied on five of the eleven parcels of ground above mentioned, on the 24th October following.   By virtue of a *venditioni exponas*, this property was sold on the 11th day of March, 1845, at which sale H. R. Gamble became the purchaser of parcels one, two, five, for the sum of $1351, in trust for his clients, who were the benficiary owners of the judgment on which the execution issued.   W. Adams, parcel number three, for $171 ; and parcel number four was sold to G. W. Morton, for the sum of $225.   On the 2d March, 1845, by deeds, with general warranty, reciting the payment of the consideration money, which was $3200, the complainants conveyed to two different purchasers the lots they had bought from Smith.

From the view taken of this case, it is not deemed necessary to state the facts in relation to the matter of Jos. Tompkins.

Afterwards, Benjamin Tompkins, acting as trustee for one who was interested in Smith's estate, purchased the judgments against Smith, which were mentioned in the commencement of this statement, on which executions were issued, which were levied on the remainder of Smith's estate, being parcels numbered six, seven, eight, nine, ten and eleven, and also on the lots conveyed by Smith to the complainants ; and on the 18th September, 1845, the said parcels were sold, and not being sufficient to satisfy the executions, the lots purchased by the complainants were sold for about $1500, of which the sum of $1400 was applied to their satisfaction, and the residue paid to the complainants, they being the purchasers of the lots conveyed to them by Smith.   The judgments, under which the last mentioned executions issued, as has been before said, were liens upon all of Smith's real estate in Cooper county, and all his estate, but that last sold, had been exhausted by Brown's execution.

Under this state of facts, the complainants maintained, that they were entitled to contribution from the purchasers at the sale made under Brown's execution, as the real estate sold at that sale was subject to the liens of the judgments under which the lots they had purchased from Smith were disposed of.

On a hearing, there was a decree dismissing the bill, from which this appeal is taken.

The opinion I hazard in this case is my own, and it will be prefaced with the remark, that it is based upon the principle asserted in many opinions of this court, previously delivered. That principle is, that the lien of a judgment or execution creditor on real estate, is preferred to a purchaser from the debtor who holds by an unrecorded deed or instrument of writing.

1. It does not appear, from any thing in the cause, that the purchase money was ever paid by the complainants for the lots which they purchased of Smith. From the date of the deed and the recital therein contained, the most favorable construction that can be put upon the transaction is, that only one of the instalments was paid, as the deed was executed before the others were due, and it is recited that the purchase money was " paid and secured to be paid." The charge in the bill that the purchase money was paid, is no evidence of the fact, although uncontradicted by the answer, it being a rule in equity that, if the answer omits to deny a fact charged in the bill, it is no admission of the fact. The plaintiff may object to the answer for insufficiency in this respect, as he may for insufficiency as to any other fact charged. But, if he takes no exception and the cause goes to a hearing on the general replication, it is a waiver of the exception and the plaintiff must prove his case. *Gamble* v. *Johnson*, 9 Mo. Rep. 625.

2. I am utterly at a loss to conceive on what legal or equitable ground the complainants claim a foothold in a court of justice. They have bought land for which, at most, they have only paid one-third of the purchase money. For what do they

claim contribution? Is it in respect to the purchase made from
Smith or to that which they made at the sheriff's sale? How
are they injured? They cannot be made to pay for land the title
to which has failed. If they lose the first instalment, then, by
their management, they will have obtained the lots for nearly
one-third less than they agreed to pay for'them. If, by reason
of the sale of the lots, Smith has been prevented from collect-
ing the purchase money, then he is the injured person, and the
suit should have been brought in his name and for his benefit.
Had he succeeded in such a suit, the only decree that would
have been made, would be one allowing an additional credit on
Brown's execution, (for the greater portion of it is yet unsat-
isfied,) and as Smith is utterly insolvent and a suit against him
would have resulted in such a decree, it was deemed most ex-
pedient, it may be supposed, to institute the action in the man-
ner it has been, as the relief, in the other form, would have
been only nominal. The complainants should have placed
the motives of their conduct above all suspicion. If they re-
lied on the title obtained from Smith, they should have paid
the balance on the execution and prevented a sale of their pro-
perty. They would not then be in the situation in which they
have voluntarily placed themselves, where they could make a
profit or not according to the result of chances. They have
suffered their property to be sold and got a title superior to and
older than that obtained from Smith, and that might have been
purchased for a nominal sum, in which event they would have
obtained property worth upwards of $3000, for literally noth-
ing. If their hazard has not resulted as favorably as was
anticipated, can they now ask relief from a court of justice?

If even Smith had received his purchase money, then the
complainants cannot have relief, because their title bond was
unrecorded at the time that the execution of Brown came to
the hands of the sheriff. Their title was at the mercy of that
execution; it was void as to that writ, and they cannot now
come in and claim contribution after a sale has taken place
under it. To hold that, would be to maintain that a title which

was void as to an execution, may, after that execution has been executed, place itself upon an equality with the title acquired under the execution. After the levy of Brown's execution, had the remainder of Smith's property, including the lots sold to the complainants, been also levied upon by executions on the elder judgments, and had the sales taken place on the same day, if, after the last levy, all except complainants' lots had been exhausted, could they then have come in for contribution against Brown's execution? That execution might have extinguished the title of the complainants, and, because it was spared, shall it now come in and claim an equality with it, and thereby diminish that fund for its satisfaction which might have been swelled by its own extinction?

Had the complainants' title paper been recorded, they having paid the purchase money, the question which is sought to be made in this case might have arisen. That question is an important one, and, situated as the court is, in regard to this case, I do not wish to express any opinion in relation to it. In my view, it is a new one, and is not affected, as I conceive, by any thing contained in the cases of *Prewitt* v. *Jewell*, 9 Mo. Rep. and *McNair's heirs* v. *Mullanphy's heirs*, 8 Mo. Rep. Decree affirmed.

Judge Ryland concurs in affirming the decree, though not in all the views of this opinion.

Judge Gamble did not sit.